# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| CARLOS A. VELAZQUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-342-JPK |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Pursuant to the parties' consent under 28 U.S.C. § 636(c), this matter is before the Court on a complaint filed seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). *See* 42 U.S.C. § 405(g). The complaint seeks to set aside that portion of the November 29, 2019 decision of a Social Security Administrative Law Judge ("ALJ") finding that Plaintiff was not disabled prior to December 31, 2017. After careful consideration of the administrative record [DE 15] and briefs filed by the parties [DE 19, 20, 21], the Court now grants Plaintiff's request to partially vacate the ALJ's decision and remand for further proceedings consistent with this order.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security effective July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

## BACKGROUND

### A.   PROCEDURAL HISTORY

On February 20, 2018, Plaintiff filed two applications for benefits under the Social Security Act ("the Act"): a title II application for Disability Insurance Benefits (DIB); and a title XVI application for Supplemental Security Income (SSI). *See* [AR 57[2]]. Plaintiff alleged in both applications that he has been disabled and unable to work since January 15, 2015. *See* [AR 58]. The applications were denied initially on July 28, 2018 [AR 77-78], and on reconsideration on October 30, 2018 [AR 103-104]. Plaintiff then requested a hearing, which was held on November 6, 2019. [AR 32-54]. On November 20, 2019, the ALJ issued a partially favorable decision [AR 16-24], finding that Plaintiff became disabled on February 20, 2018--the date of Plaintiff's SSI application [AR 24]. The ALJ also found, however, that Plaintiff was not disabled at any time from the alleged disability onset date of January 15, 2015 through the date on which Plaintiff was last insured. [AR 23]. The last insured date, which is not in dispute, is December 31, 2017. [AR 18]. Plaintiff appealed the ALJ's partial denial of benefits to the Appeals Council, which denied review on July 20, 2020 [AR 1-3; DE 1 ¶ 2], leaving the ALJ's decision as the final decision of the Commissioner. On September 22, 2020, Plaintiff filed a timely complaint seeking judicial review of that decision.

---

[2] The referenced page numbers in the Administrative Record ["AR"] are to the numbers assigned by the filer, found on the lower right corner of the page, rather than the numbers assigned by the Court's CM/ECF system located at the top of the page.

**B.**    D<small>ISABILITY</small> S<small>TANDARD AND</small> F<small>IVE</small>-S<small>TEP</small> E<small>VALUATIVE</small> P<small>ROCESS</small>

To be eligible for Social Security disability benefits, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The ALJ follows a five-step inquiry to determine whether the claimant is disabled. The claimant bears the burden of proving steps one through four, whereas the burden of proof at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

At the first step, the ALJ asks whether the claimant has engaged in substantial gainful activity during the claimed period of disability. An affirmative answer at step one results in a finding that the claimant is not disabled and the inquiry ends. If the answer is no, the ALJ moves on to the second step, where the ALJ identifies the claimant's physical or mental impairments, or combination thereof, that are severe. If there are no severe impairments, the claimant is not disabled. If there are, the ALJ determines at the third step whether those severe impairments meet or medically equal the criteria of any presumptively disabling impairment listed in the regulations. An affirmative answer at step three results in a finding of disability and the inquiry ends. Otherwise, the ALJ goes on to determine the claimant's residual functional capacity (RFC), which is "an administrative assessment of what work-related activities an individual can perform despite his limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). At the fourth step of the inquiry, the ALJ determines whether the claimant is able to perform his

3

past relevant work given his RFC. If the claimant is unable to perform past relevant work, the ALJ determines, at the fifth and final step, whether the claimant is able to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); 20 C.F.R. § 416.920(a)(4)(i)-(v). A negative answer at step five results in a finding of disability. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4)(v).

## C.   THE ALJ'S DECISION

The ALJ made the following findings in his decision:[3]

> 1.   The claimant meets the insured status requirements of the Act through December 31, 2017.

> 2.   The claimant has not engaged in substantial gainful activity since the alleged onset date.

> 3.   From January 15, 2015 until December 31, 2017, the date last insured, the only medically determinable impairment the claimant suffered was hypertension. This impairment did not significantly limit (and was not expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore the claimant did not have a severe impairment or combination of impairments.

> 4.   Beginning on February 20, 2018, the date of the claimant's title XVI application, the claimant has had the following severe impairments: cerebral autosomal dominant arteriopathy with subcortical infarct and leukoencephalopathy (CADASIL)[4]; hypertension; obstructive sleep apnea (OSA);

---

[3] The paragraphs listed herein correspond with the paragraphs in the ALJ's decision.

[4] CADASIL "is an inherited form of cerebrovascular disease that occurs when the thickening of blood vessel walls blocks the flow of blood to the brain[,] . . . characterized by migraine headaches and multiple strokes progressing to dementia. Other symptoms include cognitive deterioration, seizures, vision problems, and psychiatric problems such as severe depression and changes in behavior and personality." *https://www.ninds.nih.gov*

peroneal sensory neuropathy and polyneuropathy; and left foot drop.

5.      Since February 20, 2018, the claimant has not had an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments.

6.      Since February 20, 2018, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a), except that the claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; and can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights.

7.      Since February 20, 2018, the claimant has been unable to perform any past relevant work.

8.      The claimant is an individual closely approaching advanced age on February 20, 2018, the established disability onset date.

9.      The clamant has at least a high school education and is able to communicate in English.

10.     The claimant does not have work skills that are transferable to other occupations with the residual functional capacity defined above.

11.     Since February 20, 2018, considering the claimant's age, education, work experience and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

12.     The claimant was not disabled prior to February 20, 2018, but became disabled on that date and has continued to be disabled through the date of this decision.

_____

/Disorders/All-Disorders/CADASIL-Information-Page (last visited on 3/29/2022). "Symptoms and disease onset vary widely," with signs of the disease being experienced as early as the mid-30s for some but not until later in life for others. *Id.*

13.     The claimant was not under a disability within the meaning of the Act at any time through December 31, 2017, the date last insured.

[AR 18-23].

### D.   HEARING TESTIMONY

Plaintiff was born on August 1, 1964, and was 55 years old on the date that the ALJ issued his decision. [AR 217]. He was represented by counsel at the administrative hearing. Counsel identified the severe impairments giving rise to Plaintiff's disability claims as including "CADASIL, as a result of his stroke, hypersomnia, and hypertension." [AR 36]. Plaintiff testified that he lives independently and alone in the basement of his daughter's house. [AR 39]. He was last employed in 2015, working in a warehouse as a shipping clerk. [AR 41-42].

Plaintiff testified that he is currently unable to work because he suffers from shortness of breath ("huffing and puffing" all day long), and he cannot keep his balance or hold himself steady for very long. [AR 43]. He uses a foot brace on the left side to prevent severe leg pain, but the brace makes him lean to one side so that, when standing, he always has to be near something like a wall to brace himself. [*Id.*]. Plaintiff has had a problem with his left leg since late 2017, as reported by his wife when he went to the emergency room in January 2018 and was found to have suffered a stroke. [AR 44]. He can only stand for about five to ten minutes at a time and walk a couple hundred feet before needing to sit down. [AR 46]. He also cannot sit for long periods without getting up to move around. [AR 47]. His functioning has gotten worse since the stroke in January 2018. [*Id.*]. He has to write things down to remember them, his speech is impaired, and

he loses his balance frequently. [*Id*.]. He has to be helped with stairs by family members, and they also perform all household chores for him. His only daily activity is going to the park for the exercise of moving from one bench to another. He tries to avoid napping so as not to make his sleep at night any more difficult than it already is due to the CADASIL. But he gets tired easily and often falls asleep during the day. [AR 48]. His biggest complaint is that the medicines he takes for his conditions make him feel poorly. [AR 50]. No questions were asked by either the ALJ or Plaintiff's counsel to elicit testimony about whether these or any other symptoms predated December 31, 2017 (besides Plaintiff's reference to having had "problems" with his left foot since late 2017).

### E.   MEDICAL EVIDENCE

There are no medical opinions in the record and no medical records dated before the last insured date of December 31, 2017. The earliest medical records are from January 10, 2018, when Plaintiff was taken to the emergency room by ambulance complaining of acute onset of a "squeezing" chest pain, shortness of breath, and intermittent dizziness over the previous few days. [AR 307, 345]. He was admitted to and treated at the hospital for five days. Hospital records show that either Plaintiff or a family member reported that he had not been taking his hypertension medications because he could not afford them, and that he had been "dragging" his lower left leg for the past two weeks and urinating close to twenty times a day. [*Id*.]. Plaintiff's other reported symptoms included gait disturbance, bilateral numbness to legs, a weight loss of thirty pounds in the past month,

and possibly slurred speech[5]. [AR 345, 347, 352, 355]. The records document a past medical history of a cerebral vascular accident (stroke) in January 2014, ICH (intracerebral hemorrhage), an aneurysm of the abdominal aorta, and a clinical history of dizziness and hypertension. [AR 307, 314, 345, 335].

An assessment of Plaintiff's gait and motor skills during his hospitalization showed normal station and base, strength graded at 4 out of 5 in the bilateral upper and lower extremities, bulk and tone within normal limits, and the absence of tremors, fasciculations, or abnormal involuntary movements. [AR 316]. An MRI of Plaintiff's brain was taken on the second day of his hospitalization, which showed "[s]evere chronic microangiopathy and multiple chronic lacunar infarcts with hypertense lesions . . . highly suggestive of CADASIL," as well as signs of "chronic microhemorrhages, which may be seen with a hypertensive etiology." [AR 314, 317].

On January 25, 2018, ten days after his release from the hospital, Plaintiff was taken to the emergency room by ambulance a second time, complaining of elevated blood pressure, chest pain, and feeling dizzy after taking his medications. [AR 530-534]. His wife reported that he woke up feeling nauseated and was off balance. [AR 530]. The doctor did not feel a neurological evaluation was warranted at that time because a c-scan of Plaintiff's head did not show any acute signs indicative of a stroke and he "has other conditions that could be the etiology of his symptoms." [AR 534].

---

[5] *Compare* [AR 349 (clinical history shows slurred speech for two weeks); AR 345, 349 (reporting that patient or family denied slurred speech)]; *with* [AR 355 (no slurred speech observed at that time, but clinical history included slurred speech for two weeks)].

On January 29, 2018, Plaintiff had a follow-up appointment with a cardiologist regarding his hypertension. [AR 329]. His reported past and current symptoms at that time were similar to when he was hospitalized earlier in the month. [AR 326, 329, 330, 360]. Plaintiff's medical records from March and April 2018 show that he saw a doctor on only two occasions, both for elevated blood pressure, described as a "chronic problem" starting more than one year ago with no associated anxiety, blurred vision, headaches, palpitations or shortness of breath. [AR 553]. The March medical records describe Plaintiff's hypertension as "gradually worsening since onset" and "uncontrolled" [*id.*], while the April medical records describe it as "controlled" and "gradually improving since onset." [AR 562].

The first neurological evaluation in the record occurred on June 5, 2018. [AR 574]. Plaintiff stated that, since his January hospitalization, he felt "off balance," and that he suffered from disequilibrium, mild dysarthria, occasional drooling, and intermittent headaches. [AR 578-79]. The doctor noted that Plaintiff's symptoms and signs were consistent with CADASIL [AR 582]. She also noted a history of intracerebral hemorrhage without residual deficit. [AR 578]. A neurological review of symptoms showed "positive" for headaches and imbalance, while "negative" for, among other things, memory loss, seizure, syncope, blurred vision, dizziness, confusion, loss of strength, lack of coordination, abnormal gait, daytime sleepiness, weight loss, or chest pain. [AR 579, 581]. Plaintiff had "no pronator drift,' and his strength was graded at 5 out of 5 in the bilateral upper and lower extremities, with normal station and gait. [AR 582]. At the end of the visit, Plaintiff was given referrals for verbal and physical therapy. [*Id.*].

9

On July 9, 2018, Plaintiff attended a consultative examination at the request of the State Agency. [AR 21]. The consultative examiner noted that Plaintiff reported having suffered with hemorrhagic stroke secondary to brain aneurysm in 2014 as well as in January 2018. [*Id.*]. Since the stroke in January 2018, Plaintiff reported that he had difficulty with all routine jobs due to right hemiparesis, gait difficulty, pain in the right aspect of his body, speech difficulties, shortness of breath from physical exertion, and insomnia. [*Id.*]. The consultative examiner found that Plaintiff's speech was slightly slurred, his gait was limping, and he had a mildly flapping right foot upon walking. [AR 602]. The examiner also found shortness of breath, unsteadiness when walking heel to toes, and difficulty squatting, while noting that Plaintiff was ambulating without the support of any assistive device and able to get on and off the examining table without any difficulty. [AR 602-603].

From July to September 2018, Plaintiff was seen for elevated blood pressure. The remainder of Plaintiff's medical records, from September 2018 through September 2019, are summarized in the ALJ's decision. In general, they indicate, among other things, more frequent contact with medical professionals over deteriorating gait and movement issues, balance and disequilibrium issues, left foot pain, and elevated blood pressure. [AR 21-22].

## STANDARD OF REVIEW

The question before the Court upon judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by

substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); *see* 42 U.S.C. § 405(g). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999). A reversal may also be called for "if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996)). "The ALJ also has a basic obligation to develop a full and fair record," *id.*, but the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits,' the court must defer to the Commissioner's resolution of that conflict." *Beardsley*, 758 F.3d at 837 (quoting *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

The Court reviews the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the Seventh Circuit has "repeatedly admonished ALJs to 'sufficiently articulate [their] assessment of the evidence to assure [the court] that [they] considered the important evidence and ... to enable [the court] to trace the path of [their] reasoning.'" *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (quoting *Hickman v. Apfel*, 187 F.3d 683,

689 (7th Cir. 1999)). The ALJ must "build an 'accurate and logical bridge from the evidence to [his or her] conclusion'" so that the reviewing court "may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Id.* (citations omitted).

## ANALYSIS

The ALJ's finding that Plaintiff has been disabled since February 20, 2018 due to his severe impairments of CADASIL, hypertension, peroneal sensory neuropathy and polyneuropathy, and left foot drop, is unchallenged in this appeal. The only dispute is whether Plaintiff was disabled prior to December 31, 2017, the date on which he was last insured.

Plaintiff argues that, in determining whether he was disabled prior to December 31, 2017, the ALJ failed to apply the analytical framework set out in Social Security Ruling 18-01p, SSR 18-01P (S.S.A.), 2018 WL 4945639 (Oct. 2, 2018).[6] Because the ALJ did not apply SSR 18-01p, Plaintiff argues, he failed to consider medical and other evidence in the record from after December 31, 2017 bearing on whether Plaintiff was disabled prior to that date. According to Plaintiff, the ALJ might have inferred from this evidence,

---

[6] SSR 18-01p rescinded and replaced Social Security Ruling 83-20, SSR 83-20 (S.S.A.), 1983-1991 Soc. Sec. Rep. Serv. 49, 1983 WL 31249 (1983). The new rule became effective on October 2, 2018, *see* SSR 18-01p, 2018 WL 4945639, at * 1, and is to be applied to new applications that are filed, and to claims that are pending, on or after its applicable date, *id.* at *7. Although Plaintiff filed his DBI and SSI applications in February 2018 (before the applicable date of SSR 18-01p), the ALJ issued his decision on November 20, 2019 (after the applicable date). Therefore SSR 18-01p applies to this case. *See id.*(stating that the new rule applies to "any case in which [the SSA] make[s] a determination or decision" after the applicable date).

together with the fact that CADASIL is a progressive impairment that worsens over time, that Plaintiff was suffering from CADASIL before December 31, 2017, notwithstanding that he was not diagnosed with CADASIL until approximately two weeks later, when he went to the emergency room after experiencing stroke-like symptoms. Plaintiff also argues that because CADASIL is "an 'extremely rare' genetic disorder" [DE 19 at 9 (citation omitted)], the ALJ should have called on a medical expert to assist with determining the onset date for Plaintiff's disability from that disease.

### A. OVERVIEW OF SSR 18-01p

The stated purpose of SSR 18-01p is to "explain what [the SSA] means by EOD [Established Onset Date] and clarif[y] how [the ALJ] determine[s] the EOD." SSR 18-01p, 2018 WL 4945639, at * 2. The EOD is defined as "the earliest date that the claimant meets both the definition of disability and the non-medical requirements during the period covered by his or her application." *Id.* When a claimant has a non-traumatic impairment[7] and the ALJ has determined that the evidence supports a finding that the claimant met the statutory definition of disability, the ALJ "will determine the first date that the claimant met that definition." *Id.* at *5.

The date on which the ALJ finds "the claimant first met the statutory definition of disability must be supported by the medical and other evidence and be consistent with the nature of the impairment(s)." *Id.* The ALJ will "consider whether the claimant first

---

[7] CADASIL would fall under this category. *See* SSR 18-01p, 2018 WL 4945639, at *5 (stating that non-traumatic impairments include "progressive impairments that [are] expect[ed] to gradually worsen over time").

met the statutory definition of disability at the earliest date within the period under consideration, taking into account the date the claimant alleged that his or her disability began." *Id.* at *6. The ALJ also will consider:

> the nature of the claimant's impairment; the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings.

*Id.* The date on which the ALJ finds that the claimant first met the statutory definition of disability "may predate the claimant's earliest recorded medical examination or the date of the claimant's earliest medical records." *Id.*

If the record is insufficient for the ALJ to determine the first date on which the claimant became disabled using the above considerations, the ALJ has several options. First, "[i]f there is information in the claim(s) file that suggests that additional medical evidence relevant to the period at issue is available," the ALJ "will assist with developing the record and may request existing evidence directly from a medical source or entity that maintains the evidence." *Id.* Second, the ALJ "may consider evidence from other non-medical sources such as the claimant's family, friends, or former employers." *Id.* Finally, the ALJ "may call on the services of an ME [Medical Expert]." [*Id.*] But the decision to call on the services of an ME to assist in inferring the date that the claimant first met the statutory definition of disability "is always at the ALJ's discretion," and "[n]either the claimant nor his or her representative can require" the ALJ to do so. [*Id.*].

### B. WAS THE ALJ REQUIRED TO USE THE FRAMEWORK IN SSR 18-01p TO DETERMINE AN ONSET DATE[8] FOR PLAINTIFF'S DISABILITY FROM CADASIL?[9]

Notwithstanding that SSR 18-01p is the cornerstone of Plaintiff's arguments for reversal of the ALJ's decision, the Commissioner never mentions SSR 18-01p in her response brief. Instead, the Commissioner argues that the ALJ's decision should be affirmed because Plaintiff bore the burden of proving his disability prior to December 31, 2017, and a severe impairment "must be established by objective medical evidence from an acceptable medical source." [DE 20 at 4 (quoting 20 C.F.R. § 404.1521)]. But Plaintiff met his burden of proof with objective medical evidence: the ALJ found he was disabled as a result of CADASIL as of the date of his two applications. The reason the ALJ decision should be reversed, according to Plaintiff, is that, after finding Plaintiff was disabled from CADASIL, the ALJ was required to apply the analytical framework of SSR 18-01p to determine the onset date for that disability. And the Commissioner has said nothing in response to that argument. Instead, the Commissioner contends that Plaintiff's arguments about the possibility of inferring an onset date prior to December 31, 2017 are nothing more than "mere conjecture or speculation." [DE 20 at 6 (quoting *Summers*, 864

---

[8] For simplicity, going forward the Court may use the shortened terminology of "onset date" interchangeably with SSR 18-01p's longer phrase "date on which the claimant first became disabled." Recall that the onset date is one of two components that make up the "Established Onset Date," as that term is defined in SSR 18-01p, with the other component being the date on which the claimant first meets the nonmedical requirements for a finding of disability.

[9] The ALJ found that Plaintiff was disabled from CADASIL in combination with several other severe impairments. For convenience, however, the Court will refer only to CADASIL going forward.

F.3d at 527)]. But Plaintiff's argument is that SSR 18-01p *required* the ALJ to infer an onset date using the rule's guidelines. A general objection concerning conjecture or speculation is not responsive to that argument.

The Court's own research shows that the question of whether the ALJ was required to determine an onset date in circumstances like the present is one of first impression insofar as SSR 18-01p is concerned. The issue has been addressed in the case law up until now only under the predecessor rule, SSR 83-20. *See* footnote 6, *supra*. And, under that rule, as interpreted and applied by the majority of district courts in this circuit, an ALJ's finding of disability for purposes of a claimant's SSI application triggers an obligation to apply the analytical framework in SSR 83-20 to determine an onset date for that disability for purposes of the claimant's DBI application. *See, e.g., Miller v. Berryhill*, No. 17 C 235, 2019 WL 480001, at * 5 (N.D. Ill. Feb. 7, 2019); *Summers v. Berryhill*, No. 15 C 7820, 2017 WL 1178521, at *6 (N.D. Ill. Mar. 30, 2017).[10]

---

[10] *See generally Eichstadt v. Astrue,* 534 F.3d 663, 666 (7th Cir. 2008) ("SSR 83-20 addresses situations in which an ALJ finds that a person is disabled as of the date [he] applied for disability insurance benefits, but it is still necessary to ascertain whether the disability arose prior to an even earlier date--normally, when the claimant was last insured."); *Briscoe,* 425 F.3d at 352 (same); *see also Ibrahim I. v. Saul,* No. 17-cv-05983, 2020 WL 1820598, at *4 (N.D. Ill. Apr. 10, 2020) (in determining whether the claimant was disabled, the ALJ was required to consider all of the claimant's medically determinable impairments "*at the time of a claimant's application*," and if those impairments render the claimant disabled, then the ALJ proceeds to determine the onset date of the disability by applying SSR 83-20 (emphasis added)); *Smith* v. *Colvin*, 208 F. Supp. 3d 931, 939-40 (N.D. Ind. 2016) ("where the evidence is at very least 'ambiguous' regarding the possibility that 'the onset of [the claimant's] disability occurred before the expiration of her insured status,' the ALJ should turn to SSR 83-20 to make the necessary retroactive findings" (citations omitted)); *Campbell v. Chater*, 932 F. Supp. 1072, 1075 (N.D. Ill. 1996) ("the only precondition to the ALJ's resort to SSR 83-20 should be the *fact* that the ALJ has found such disability--and

A ruling such as SSR 83.20 may be "superseded, modified or revoked by later legislation, regulations, court decisions, or rulings." *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991). While the analytical framework for determining an onset date is largely the same as it was under SSR 83.20, SSR 18-01p does create the new concept of an EOD and also includes commentary not found in SSR 83-20 regarding the circumstances that call for a determination of the date on which the claimant first became disabled. For instance, SSR 18-01p states generally that, "[i]f we find that a claimant meets the statutory definition of disability and meets the applicable non-medical requirements during the period covered by his or her application, we then determine the claimant's EOD." SSR 18-01p, 2018 WL 4945639, at *2. But it is unclear whether this statement means the ALJ must determine the claimant's EOD anytime there is a finding of disability, *or* only when there is a finding of disability "for the period covered by [the claimant's] application." A similar ambiguity is found in a later footnote, where the rule explains that "if we find that the claimant did not meet the statutory definition of disability before his or her insured status expired, we will *not* determine whether the claimant is currently disabled or was disabled within the 12-month period before the month that he or she applied for benefits." SSR 18-01p, 2018 WL 4945639, at *5 n.17 (emphasis added). The footnote continues that, "[i]f, however, the claimant also filed a different type of claim—for example, a claim for SSI disability payments—we may have to consider whether the

_____

not the particular manner in which the ALJ has articulated that finding" (emphasis in original)).

17

claimant is currently disabled to adjudicate the SSI claim." *Id.* There is no further explanation of whether the last sentence changes the outcome in the situation addressed by the first sentence; that is, whether a disability determination made by reason of the SSI claim would trigger a duty to find the date that the claimant first became disabled by that disability for purposes of the DBI application.

By ignoring Plaintiff's contention that the ALJ was required to apply SSR 18-01p to determine an onset date for his disability from CADASIL, the Commissioner is necessarily, albeit implicitly, rejecting any such requirement. "Courts routinely accord considerable deference to an agency's interpretation of its own regulations." *Prince*, 933 F.2d at 602. But the Commissioner does not explain why she rejects the applicability of SSR 18-01p's analytical framework for determining a disability onset date. "It is not the obligation of th[e] court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Riley v. City of Kokomo, Ind. Hous. Auth.*, 909 F.3d 182, 190 (7th Cir. 2018) (quoting *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 408–09 (7th Cir. 1988)). The Court could not hold, consistent with the position the Commissioner has implicitly taken in this appeal, that SSR 18-01p did *not* require the ALJ to determine an onset date, "without building an argument on [the Commissioner's] behalf from the ground up, which is not the Court's role." *Tomsheck v. Town of Long Beach*, No. 3:17-CV-120 JD, 2019 WL 3778690, at *3 (N.D. Ind. Aug. 12, 2019) (citing *United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) ("The parties—not the courts—must research and construct available legal arguments.")). Plaintiff's argument that the ALJ was required to determine an onset date for his disability from CADASIL using the

framework laid out in SSR 18-01p "may be disputable, but if so, it is [the Commissioner's] duty to explain why, and [she] did not do so." *Id.*

In sum, because the Commissioner makes no argument that SSR 18-01p changed the guidelines as interpreted in prior case law for when an onset date must be determined, the Court will assume that prior case law under SSR 83-20 continues to control the situation before the Court---that is, that SSR 18-01p, like SSR 83-20, required the ALJ to determine an onset date for Plaintiff's disability from CADASIL using the analytical framework set out in that rule.

## C.   DID THE ALJ ADHERE TO SSR 18-01p IN DETERMINING AN ONSET DATE FOR PLAINTIFF'S DISABILITY FROM CADASIL?

The fact that the ALJ did not mention SSR 18-01p in his decision is not dispositive if the decision otherwise shows he "properly applied the requisite analysis." *Briscoe*, 425 F.3d at 352. [11] But the Commissioner does not argue that the ALJ employed SSR 18-01p in arriving at his conclusion that Plaintiff was not disabled prior to December 31, 2017, so arguably she has waived that argument. In any event, however, the Court has carefully reviewed the ALJ's decision and it is apparent that the ALJ did not employ the analysis required by SSR 18-01p for determining a disability onset date when he concluded that

---

[11] There is no indication in the hearing transcript or the ALJ decision that SSR 18-01p was raised or considered in those proceedings. The first mention of the onset date rule is in Plaintiff's Request for Review of Unfavorable ALJ Decision [AR 189], but even there, Plaintiff cited the old rule, SSR 83-20, rather than the applicable rule, SSR 18-01p. The Commissioner does not argue, however, that Plaintiff's mis-citation before the Appeals Council or his failure to raise the onset date issue before the ALJ constitutes a waiver.

the onset date for Plaintiff's disability from CADASIL was February 20, 2018 and that Plaintiff was not disabled at any time prior to December 31, 2017.

To begin with, it appears that the ALJ selected February 20, 2018 as the onset date for Plaintiff's disability from CADASIL because it is the date of Plaintiff's SSI application. Under title XVI, a "claimant cannot receive payment for [SSI] for any time prior to the application [date], regardless of the length of the disability." *Slaughter v. Astrue*, 857 F. Supp. 2d 631, 635 n. 42 (S.D. Tex. 2012) (citing 20 C.F.R. § 416.335 and *Brown v. Apfel*, 192 F.3d 492, 495 n. 1 (5th Cir. 1999)). Since title XVI payments are made beginning with the date of application, i.e., there is no retroactivity of payment, "specific medical evidence of the exact onset date need not generally be obtained prior to the application date." SSR 83–20, 1983 WL 31249, at *7; *see Plaisance v. Astrue*, Civil Action No. 07–8242, 2008 WL 4808852, at *1 (E.D. La. Oct.31, 2008) (explaining that, because "the month following an application ... fixes the earliest date from which [SSI] benefits can be paid[,] . . . the relevant time period for any period of disability is [the application date] through the date of the ALJ's decision") (internal quotation marks and citations omitted); *accord Griffith v. Colvin*, No. Civil Action No. 6:13-23–DCR, 2013 WL 5536476, at *3 n. 1 (E.D. Ky. Oct. 7, 2013).

While Plaintiff's "filing date is relevant to the onset date for supplemental security income, [ ] it is *not* relevant to the onset date for disability benefits." *Aulik v. Berryhill*, 711 F. App'x 806, 808 (7th Cir. 2018) (emphasis in original) (stating that "the ALJ did not properly follow SSR 83-20," when he "arrived at an onset date … using the filing date of [the claimant's] dual applications for disability benefits and supplemental security

20

income"). The onset date for Plaintiff's disability from CADASIL for purposes of Plaintiff's DBI application is "the date when it is most reasonable to conclude, from a legitimate medical basis, that the impairment suffered was sufficiently severe to prevent the individual from partaking in substantial gainful activity." *Holstrom v. Comm'r of Soc. Sec.*, No. 1:19-cv-445 (JJM), 2020 WL 3989349, at *4 (W.D.N.Y. July 15, 2020) (internal quotation marks and citation omitted). That date selected must be supported by substantial evidence. *Canen v. Comm'r of Soc. Sec.*, No. 4:13-cv-2-PPS, 2013 WL 5966463, at *3 (N.D. Ind. Nov. 8, 2013). The ALJ "cannot blindly place the onset date on the day of a medical exam, a fixed number of weeks or months before a certain diagnosis, or based upon the filing of a claim." *Busch v. Kijakazi*, No 1:21-cv-01002-CBK, 2021 WL 5771228, at *4 (D.S.D. Dec. 6, 2021); *see also Philips v. Comm'r of Soc. Sec.*, No. 19-cv-1633 (RRM), 2021 WL 2550387, at *12 (E.D.N.Y. June 22, 2021) ("An arbitrary onset date selection will not be accepted by a reviewing court") (internal quotation marks and citation omitted). The onset date of February 20, 2018 was "merely a decision made to align with Plaintiff's [ ] application for SSI," and thus not supported by substantial evidence. *Emilio U. v. Saul*, No. 1:19-cv-03234-FVS, 2020 WL 7010226, at *6 (E.D. Wash. Oct. 14, 2020).

In deciding that Plaintiff was not disabled prior to December 31, 2017, the ALJ gave no consideration to Plaintiff's disability on February 20, 2018. Instead, without acknowledging his disability finding based on CADASIL made later in the decision, the ALJ cited three reasons for his conclusion that Plaintiff was not disabled prior to his last insured date: (1) "[p]rior to the date last insured, there is no mention of the claimant having any specific care or complaints" [AR 20]; (2) although Plaintiff complained of

some symptoms stemming from a stroke, "there is no mention of a stroke until January 2018" [*id.*]; and (3) the State Agency consultants found at the initial level and on reconsideration that there was insufficient evidence to determine that Plaintiff was disabled prior to the date of last insured [AR 20].

Beginning with the ALJ's comment about the State Agency consultants, those consultants reached the same conclusion of not disabled for Plaintiff's SSI application [AR 57-67; AR 91-102], whereas the ALJ found that Plaintiff was disabled as of February 20, 2018. Given that the State Agency Consultants did not believe Plaintiff was disabled at any time, their "opinion obviously could not shed any light on whether [Plaintiff's] disability onset date was prior to" February 20, 2018. *Anderson v. Colvin*, No. 13-CV-73-CJP, 2014 WL 4748442, at *11 (S.D. Ill. Sept. 24, 2014). "In other words, [their] opinion was completely irrelevant to [the] ALJ['s] [ ] task and there was no reason for [them] to evaluate it. The fact that [the] ALJ [ ] considered th[ose] opinion[s] at all illustrates that he was not following the dictates of SSR [18-01p]." *Id.*

As for the ALJ's statements regarding there being no specific care or complaints, and no stroke suffered, prior to December 31, 2017, the ALJ could not have arrived at those conclusions if he had applied SSR 18-01p. He apparently reached them based on the absence of medical records from prior to that date. But SSR 18-01p expressly states that the onset date may be inferred based on, among other things, "the nature of the claimant's impairment," "any statement by the claimant about new or worsening signs, symptoms, and laboratory findings," and "evidence from other non-medical sources such as the claimant's family, friends, or former employers." SSR 18-01p, 2018 WL

4945639, at *6. Not only that, the rule explicitly states the inferred onset date "*may predate the claimant's earliest recorded medical examination or the date of the claimant's earliest medical records." Id.* (emphasis added).

As the Seventh Circuit explained with respect to comparable language in the predecessor SSR 83-20,[12] the requirement of supporting medical records "does not mean that a claim is doomed for lack of medical evidence establishing the *precise* date an impairment became disabling. In such cases, the ALJ must 'infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.'" *Briscoe,* 425 F.3d at 353 (quoting SSR 83-20) (emphasis in original).[13]

---

[12] The fact that *Briscoe* and other cited case law apply SSR 83-20 does not make those decisions distinguishable on that basis. *See Ringer v. Kijakazi*, No. 20-cv-120-wmc, 2021 WL 4452308, at *4 (W.D. Wis. Sept. 29, 2021) ("[W]hile SSR 18-01p may provide more clarity and detail about the factors an ALJ is to consider in determining the onset date, the substance of the regulation does not differ greatly from the prior regulation" in that "both versions required the ALJ to consider the claimant's alleged onset date, date last engaged in substantial gainful activity and the medical and other evidence, with the focus on the last factor").

[13] *See, e.g., Washington v. Saul*, No. 1:17-3365-CMC-SVH, 2019 WL 3208755, at *10 (D.S.C. July 10, 2019) (reversing where the ALJ determined the plaintiff's disability onset date based on the absence of medical records), *report and recommendation adopted*, 2019 WL 3207004 (D.S.C. July 15, 2019); *Anderson*, 2014 WL 4748442, at *8 (citing *Briscoe*); *Lewis v. Astrue*, 518 F. Supp. 2d 1031, 1041 (N.D. Ill. 2007) ("[T]he lack of medical records that support an earlier date should not excuse the ALJ from applying the SSR 83-20 analysis."); *Rohan v. Barnhart*, 306 F. Supp. 2d 756, 768 (N.D. Ill. 2004) ("an ALJ is not permitted to rely on the first date of diagnosis solely because no earlier diagnosis date is available, but rather an ALJ must obtain medical and non-medical evidence" (citing *Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987))); *Taylor v. Massanari*, No. 00 C 5643, 2001 WL 1035286, at *7 (N.D. Ill. Sept. 7, 2001) ("SSR 83-20 specifically contemplates the possibility of determining an onset date absent corroborating medical documentation"); *Dutka v. Apfel*, No. 97 C 8604, 1999 WL 202910, at *4 (N.D. Ill. Mar. 31, 1999) ("The fact that plaintiff did not seek treatment prior to 1995 does not dispose of the question, as SSR 83–20 presumes

Plaintiff's hospital records from January 2018 mention that Plaintiff and/or his family members reported that he had been suffering symptoms such as dragging his left leg, loss of weight, and urinary frequency for two weeks to a month prior to his January 10, 2018 hospitalization. [AR 307]. In addition, Plaintiff's medical records indicate that he reported having suffered an earlier stroke in January 2014. [E.g., AR 307, 314, 335, 345]. Those records also indicate Plaintiff had a history of ICH[14] three or four years earlier. [*See* AR 307]. Under SSR 18-01p, it was improper to not take this evidence into consideration.[15] Furthermore, SSR 18-01p, had it been applied, would have required the ALJ to consider the timeframe of CADASIL, particularly as to its slowly progressive nature and likely symptoms that may have been disabling before it was first recognized in Plaintiff's

---

such a situation where medical records are not available although the condition is progressive.").

[14] ICH stands for intracerebral hemorrhage, and is a type of stroke. *See https://www.ncbi. nlm.nih.gov/pmc/articles/PMC5089075/* (last visited 3/29/2022).

[15] *See, e.g., Phillip B. v. Saul*, No. 1:19-cv-00972-MJD-SEB, 2019 WL 6887775, at *7 (S.D. Ind. Dec. 17, 2019) ("The Seventh Circuit has stated that post-date last insured evidence may be probative of the claimant's condition within the relevant period." (citing *Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012) (rejecting government's argument that ALJ could not consider evidence after the date last insured), and *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of claimant's condition during that period."))); *Buis v. Colvin*, No. 1:13-CV-00878-RLY-MJD, 2015 WL 566889, at *4 (S.D. Ind. Feb. 11, 2015) ("[P]ursuant to applicable Seventh Circuit case law, the ALJ was required to consider the post-[date last insured] evidence. The ALJ could have articulated reasons why such evidence was irrelevant; however, he did not."); *Endris v. Colvin*, No. 3:12-CV-674-CAN, 2013 WL 5314616, at *5 (N.D. Ind. Sept. 18, 2013) (ALJ should not have ignored notes from 2010 and 2011 that reported claimant complained of pain beginning in 2007, a timeframe that predated his last insured date; "[j]ust because these pieces of medical evidence are dated after the last insured date does not make them irrelevant to an inference about the disability onset date").

hospital records, less than two weeks after Plaintiff's last insured date. "[T]he ALJ must factor the [January 2018] visit into [his] calculus when determining whether the MRI inferred an onset of the condition prior to the [date last insured]." *Busch*, 2021 WL 5771228, at *6. Plaintiff "has chronic, progressive diseases, and the ALJ's establishment of disability onset date should have been met with a great deal more inquiry." *Washington*, 2019 WL 3208755, at *10 (internal quotation marks and citation omitted).

Indeed, under SSR 18-01p, the ALJ had a duty to develop the record regarding Plaintiff's symptoms prior to the last insured date beyond just those statements in the Plaintiff's post-2017 medical records. Plaintiff's hearing testimony concerning his impairments, symptoms, and physical limitations was limited to the current time period. Plaintiff did not offer testimony, nor did the ALJ ask questions about, Plaintiff's impairments, symptoms, and physical limitations before his insured status expired. As a result of the fact that his questions at the hearing "focused on the present," *Anderson*, 2014 WL 4748442, at *12, the ALJ's development and review of the non-medical evidence in the record was inadequate. *See id.* (stating that the ALJ "squandered his opportunity to obtain evidence from [the claimant] regarding his [ ] condition" in the time period relevant to determining the onset date); *Taylor,* 2001 WL 1035286, at *8 (stating that the ALJ did not fulfill his duty to develop a full and fair record when he failed to question the plaintiff regarding his infrequent doctor's visits in setting the onset date).

The ALJ also did not consider the possibility of calling on the services of a medical expert to assist in inferring an onset date for Plaintiff's CADASIL. Plaintiff argues that the ALJ should have done so because CADASIL is a rare genetic disorder. *See, e.g., Dutka,*

1999 WL 202910, at *4 (stating that "[a] medical advisor would have provided insight into 'the history and symptomatology of the disease process'" where no alternative date was clear from the evidence (quoting SSR 83-20)). SSR 18-01p states that it is always up to the ALJ to decide whether to call on the services of an medical expert. Nevertheless, "'the requirement that . . . a medical advisor be consulted . . . is merely a variation on the most pervasive theme in administrative law--that substantial evidence support an agency's decisions.'" *Wellington v. Berryhill,* 878 F.3d 867, at 874 (9th Cir. 2017) (quoting *Bailey v. Chater,* 68 F.3d 75, 80 (4th Cir. 1995)). As one district court explained:

> SSR 18-01p's unambiguous statement that the ALJ is not required to call upon a ME in these circumstances is different than this Court's authority to order an ALJ to procure clarifying statements from a treating physician when crucial issues remain undeveloped in the administrative judge's record. SSR 18-01p and prior case law make clear this Court cannot require an ALJ to call upon an ME when inferring the date a claimant has first met the statutory definition of disability, but can order the ALJ to develop the record further through obtaining clarifying statements from a treating physician when crucial issues are undeveloped as to which he likely can provide material information, such as instances where open questions remain on discerning a non-arbitrary EOD.

*Busch*, 2021 WL 5771228, at *3 (internal citations omitted); *see also Washington,* 2019 WL 3208755, at *10 and n.11 (cautioning the Commissioner that, despite SSR 18-01p's qualification regarding the ALJ's discretion on whether to call on a medical expert, the ALJ's "determination of onset date must be supported by substantial evidence").

In summary, the ALJ did not apply the analytical framework set out in SSR 18-01p for determining an onset date for Plaintiff's disability from CADASIL. If, as the ALJ

found, Plaintiff's CADASIL was severe enough to render him disabled on February 20, 2018, there may be a basis, particularly with greater development of the record, for inferring the onset of that disability occurred at some point prior to December 31, 2017 using the analytical framework required by SSR 18-01p for inferring a disability onset date. *See Anderson,* 2014 WL 4748442, at *9 (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989) (noting "the common sense notion," which is "somewhat acknowledged by SSR 83–20," that a claimant "does not suddenly become disabled").

As noted previously, even absent any issues with the ALJ following the proper analytical framework in SSR 18-01p, the ALJ is required to "develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley,* 758 F.3d at 837 (internal citations omitted). With the ALJ's decision and the current record, there is no logical bridge to the ALJ's EOD finding. As discussed above, to the extent the ALJ found an EOD of February 20, 2018, that appears based solely upon filing dates, and not medical evidence.

### D.   REMAND

"[T]he ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal." *Suttner v. Kijakazi,* No. 20-C-583, 2021 WL 4191438, at *3 (E.D. Wis. Sept. 15, 2021) (citing *Proschaska*

*v. Barnhart,* 454 F.3d 731, 736-37 (7th Cir. 2006)).[16] There is at least an argument to make that the ALJ's failure to apply the required analytical framework was harmless on the current record. To be sure, given the diagnosis date of January 11, 2018 and the nature of CADASIL as an inherited progressively debilitating disease, it is highly likely that Plaintiff suffered from that disease prior to December 31, 2017. But that conclusion does not answer the question of whether Plaintiff was *disabled* as a result of CADASIL prior to December 31, 2017. *See, e.g., Busch,* 2021 WL 5771228, at *2 (citing *Thomas v. Chater,* 933 F. Supp. 1271, 1274 (D.V.I. 1996), *order amended,* 945 F. Supp. 104 (D.V.I. 1996) ("Evidence of an impairment that became disabling *only after* the date of being last insured *cannot* be the basis for the determination of entitlement for disability benefits, even though the impairment may have existed before a claimant's insured status expired.") (emphasis added))); *Holstrom,* 2020 WL 3989349, at *3 ("a diagnosis alone is insufficient to establish a severe impairment" (internal quotation marks and citation omitted)). The evidence supporting a finding of disability is mostly from 2019. The medical evidence between January 2018 through around June 2018 regarding the degree to which Plaintiff's impairment from CADASIL was disabling is much more ambiguous.

Nevertheless, the ALJ found that Plaintiff was disabled as of February 20, 2018, and neither party has challenged that finding. And, the Commissioner does not in any event make a harmless error argument. *See Kohne-Gaier v. Saul,* No. 1:19-CV-351-JPK, 2020

---

[16] *See* SSR 18-01p, 2018 WL 4945639, at *1 (stating that although SSRs do not have the same force and effect as law, they are binding on all components of the SSA in accordance with 20 C.F.R. 402.35(b)(1)).

WL 5810164, at *7 n.4 (N.D. Ind. Sept. 30, 2020) ("as the Commissioner did not raise a harmless error argument here, any such argument is waived" (citing cases)).

The Court stresses that nothing that has been said in this opinion and order should be construed as an indication that the Court believes that Plaintiff was disabled before December 31, 2017, or that he should be awarded benefits for the period in question. On the contrary, the Court has not formed any opinions in that regard. The Court leaves further development of this issue and others discussed herein to the Commissioner after further proceedings. What matters is that on remand the ALJ consider the full administrative record, i.e., the post-December 31, 2017 medical evidence, the nature of Plaintiff's impairments, including expected disease progression, and the need to develop the record further regarding both the disease progression and Plaintiff's symptoms prior to December 31, 2017 to better understand the progress of Plaintiff's severe impairments and determine a disability onset date that is adequately rooted in the medical record. *See Ringer*, 2021 WL 4452308, at *7. The Court is not requiring the ALJ to call on the services of a medical expert or even to develop the record further with regard to any specific evidence. The ALJ need only consider and articulate whether further development is necessary to be able to determine an EOD that is supported by substantial evidence, and, if further development of the record is deemed necessary, to take the necessary steps.

**CONCLUSION**

Based on the foregoing, Court **REVERSES** the ALJ's partial denial and **REMANDS** for further proceedings consistent with this opinion. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 30th day of March 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT